1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WEYERHAEUSER COMPANY, *et al.*,

          Plaintiffs,

    v.

AIG PROPERTY CASUALTY, INC., *et al.*,

          Defendants.

NATIONAL INTERSTATE INSURANCE
COMPANY,

          Counterclaimant,

    v.

WEYERHAEUSER COMPANY, *et al.*,

          Counterdefendants.

NO. C20-01371-RSM

ORDER GRANTING DEFENDANT
NATIONAL INTERSTATE INSURANCE
COMPANY'S MOTION TO TRANSFER
VENUE

# I.    INTRODUCTION

This matter comes before the Court on Defendant National Interstate Insurance Company (NIIC)'s Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.  Dkt. #14.  Defendants First Mercury Insurance Company ("FMIC") and North River Insurance Company ("North River") join NICC's motion.  Dkt. #24.  Defendant Lexington Insurance Company ("Lexington") does not adopt every statement of fact and argument in NIIC's motion, but agrees that this lawsuit should be transferred.   Dkt. #23.   Plaintiffs Weyerhaeuser Company, Weyerhaeuser NR Company, and Aspen Insurance UK Limited ("Aspen") oppose Defendants' motion.  Dkt. #25. None of the parties request oral argument, and the Court finds it unnecessary to resolve the underlying issues.  Having reviewed NIIC's Motion, Lexington and Plaintiffs' Responses, and the remainder of the record, the Court GRANTS NIIC's Motion to Transfer Venue for the reasons set forth below.

# II.    BACKGROUND

This action arises from an insurance dispute following a truck-loading accident in Santa Clarita, California.  On July 20, 2009, California-based trucking company Gardner Trucking, Inc. ("Gardner") executed a master motor carrier contract ("the Gardner Contract") with Plaintiffs Weyerhaeuser and its wholly-owned subsidiary, Weyerhaeuser NR (collectively, "Weyerhaeuser").  Dkt. #44 at ¶ 13.  Weyerhaeuser is a Washington-based company that supplies forest products.  Dkt. #27 at ¶ 2.  Plaintiffs claim that the Gardner Contract provided that Weyerhaeuser was an "additional insured" under "all insurance policies" purchased by Gardner, and that Gardner's coverage was "primary" relative to Weyerhaeuser's own coverage. Dkt. #44 at ¶ 14.  Plaintiffs also claim that the Gardner Contract established a floor for the amount of relevant coverage secured by Gardner, with "limits of no less than . . . $1,000,000 per occurrence"

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S MOTION TO TRANSFER VENUE - 2

for transport of non-hazardous materials.  *Id.*  Plaintiffs claim that Gardner secured the coverage required by the Gardner Contract for the period relevant to this dispute, including excess coverage provided by Defendants.  *Id.* at ¶ 15.  Aspen also issued an umbrella liability policy directly to Weyerhaeuser, with a policy period of November 1, 2014 to November 1, 2015 ("the Aspen Policy").  *Id.* at ¶ 22.

With respect to Gardner's insurance coverage, Gardner purchased a "tower" of insurance policies from Defendants.  This tower included a primary policy from NIIC with a $1,000,000 limit ("the NIIC Primary Policy"), as well as several excess policies from Defendants FMIC, North River, AIG Property Casualty, Inc. ("AIG") and Lexington (collectively, "the Excess Policies").  *Id.* at ¶¶ 23-27.  Specifically, Lexington issued a first-level excess policy that provided a $2,000,000 layer of excess coverage, NIIC issued a second-level policy that provided a $3,000,000 layer of excess coverage, FMIC issued a third-level excess policy that provided a $5,000,000 layer of excess coverage, and North River issued a fourth-level excess policy that provided a $10,000,000 layer of excess coverage.  *Id.*

On or about January 25, 2017, Peter and Silvia Alfaro ("the Alfaros") filed a complaint in California Superior Court for Los Angeles County against Weyerhaeuser and fifty Doe defendants ("the Underlying Lawsuit").  *Id.* at ¶¶ 16-19.  Mr. Alfaro worked as a truck driver for Gardner, which required him to collect lumber from a wood product distribution facility in Santa Clarita, California owned and operated by Weyerhaeuser NR Company.  On or around October 26, 2015, Mr. Alfaro sustained substantial injuries after a load of lumber fell onto him from a truck.  The Alfaros' lawsuit against Weyerhaeuser alleged negligence, negligent hiring, supervision and retention, and loss of consortium arising from Mr. Alfaro's injuries.  *Id.*

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 3

Weyerhaueser initially tendered the claim arising from the Underlying Lawsuit to NIIC, in its capacity as primary insurer of Gardner. *Id.* at ¶ 20.

Once Weyerhaeuser determined that the coverage provided by NIIC's Primary Policy would be insufficient to cover the Alfaros' claim, it also tendered the claim to Defendants FMIC, North River, AIG and Lexington, all of whom issued the Excess Policies to Gardner. *Id.* at ¶ 21. Weyerhaeuser also tendered the claim to Aspen, who issued an umbrella liability policy to Weyerhaeuser directly. *Id.* NIIC responded to Weyerhauser's tender by tendering the full amount of $1,000,000 in coverage available under the NIIC Primary Policy. *Id.* at ¶ 29. However, AIG and Lexington, acting through AIG, took the position that Weyerhaeuser did not qualify as an additional insured, and that the first-level excess policy did not provide any coverage based on the theory that no coverage existed above the $1,000,000 coverage floor referenced in the Gardner Contract. *Id.* at ¶¶ 32-33. NIIC, on behalf of its second-level excess policy, and FMIC and North River, expressly or implicitly adopted Lexington's position and denied any obligation to defend or indemnify Weyerhaeuser in the Underlying Lawsuit. *Id.* at ¶ 35. Aspen and Weyerhaeuser cooperated to settle the Underlying Lawsuit and each contributed a portion towards the settlement. *Id.* at ¶ 36.

On March 18, 2020, parties held a mediation via video-conference to resolve the Underlying Lawsuit. *Id.* at ¶¶ 37-38. While the insurers for the Excess Policies were allowed to participate at the mediation, none offered to contribute towards settlement. *Id.* at ¶¶ 40-42. The mediation concluded with settlement under which NIIC paid only the amounts available under NIIC Primary Policy, none of Gardner's excess insurers contributed any amounts, and Weyerhaeuser and Aspen paid the remainder to achieve settlement.

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 4

On August 4, 2020, Weyerhaeuser and Aspen initiated this action against Defendants in Washington Superior Court for King County.  Dkt. #1-1.  After providing statutory notice to each of the Gardner excess insurers and the Insurance Commissioner of Washington state regarding Defendants' alleged violations of the Washington Insurance Fair Conduct Act ("IFCA"), Plaintiffs filed an amended complaint on August 28, 2020 and a second amended complaint on December 23, 2020.  Dkt. #1-2; Dkt. #44.  Plaintiffs seek a declaratory judgment that Defendants breached their obligations to pay the settlement and indemnify Plaintiffs against the claims asserted in the Underlying Lawsuit.  *Id.* at ¶¶ 47-50.  Weyerhaeuser and Aspen jointly allege breach of contract and seek attorney's fees, while only Weyerhaeuser alleges bad faith, violation of the Washington Consumer Protection Act ("WCPA"), and violation of IFCA.  *Id.* at ¶¶ 51-65.  Only Aspen seeks contribution and subrogation.  *Id.* at ¶¶ 66-68.  On September 17, 2020, Defendants removed this action to the U.S. District Court for the Western District of Washington.  Dkt. #1.

On November 12, 2020, NIIC filed the instant motion to transfer this case to the Central District of California based on convenience of witnesses, convenience of parties, and the interests of justice.  Dkt. #14.  FMIC and North River join NICC's motion, Dkt. #24, while Lexington agrees that this lawsuit should be transferred without adopting every fact and argument in NIIC's motion.  Dkt. #23.  Weyerhauser and Aspen oppose Defendants' motion on the basis that the Central District of California has "virtually no relationship" to the instant insurance coverage dispute, and that Defendants are merely trying to transfer the action to a more favorable forum.  Dkt. #25 at 4.

//

//

### III.   DISCUSSION

**A. Legal Standard**

Under 28 U.S.C. § 1404, this Court has discretion to transfer this case in the interests of convenience and justice to another district in which venue would be proper. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Specifically, Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 12-CV-05502-BHS, 2013 WL 364814, at *2 (W.D. Wash. Jan. 30, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Defendants, as the moving parties, bear the burden of showing that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979).

**B. Jurisdiction in California**

Before analyzing whether the interests of convenience and justice favor transfer, the Court must first consider whether venue would be proper in the Central District of California. *See* 28 U.S.C. § 1404(a). While Plaintiffs do not squarely address the issue in their briefing, they do not refute Defendants' position that this action could have been brought in that forum. *See* Dkt. #14 at 20-21; *see generally* Dkt. #25. For the reasons set forth below, the Court agrees with Defendants that venue could lie in the Central District of California.

The Central District of California has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000 and Plaintiffs and Defendants are citizens of different states. Dkt. #1. Regarding personal jurisdiction, Plaintiffs contend that

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 6

"NIIC does not allege that <u>any</u> of the Defendant insurers have <u>any</u> offices or permanent contacts in the Central District of California."  Dkt. #25 at 18 (emphases in original).  However, even if Defendants cannot establish general jurisdiction by demonstrating "substantial" or "continuous and systematic" contacts with the forum state, *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 415–16 (1984), the Central District of California may still exercise personal jurisdiction over Defendants through specific jurisdiction.   Specific jurisdiction exists if Defendants' actions—here, issuing excess insurance policies to Gardner—constitute "minimum contacts" in the Central District of California such that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Ninth Circuit applies the following three-prong test to determine if defendants have minimum contacts with a forum:

> (1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Under this test, the Central District of California has personal jurisdiction over Defendants.  By issuing policies to an insured based in San Bernadino County, California, each of the Defendants purposefully directed their activities and consummated a transaction with a resident of the Central District of California. *See* Dkt. #44 at ¶¶ 23-27.  Likewise, Plaintiffs' claims relate to Defendants' activities in the Central District of California—issuance of their insurance policies to Gardner—and therefore satisfy the second prong.  *See id.* at ¶¶ 44-68.  Regarding the third and final prong, the

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 7

1  Court finds that it would be reasonable for the Central District of California to exercise

2  jurisdiction over this matter.  Given that personal jurisdiction is satisfied, venue is proper in the

3  Central District of California under 28 U.S.C. § 1391(b)(3).

**C. Convenience and Interests of Justice**

4
5          Having concluded that Plaintiffs could have brought this action in the Central District of
6  California, the Court now addresses whether transfer is appropriate.  Parties disagree as to
7
8  whether transfer to the Central District of California would be convenient to the parties and
9  witnesses and would further the interests of justice.  In the Ninth Circuit, district courts apply a
10
11  nine-factor balancing test to determine whether to transfer a case under § 1404(a), examining:
12  "(1) the location where the relevant agreements were negotiated and executed, (2) the state that
13
14  is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective
15  parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the
16
17  chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability
18  of compulsory process to compel attendance of unwilling non-party witnesses, [] (8) the ease of
19
20  access to sources of proof, and (9) the public policy considerations of the forum state." *Jones*,
21  211 F.3d at 498–99.  For the reasons set forth below, the Court finds that the nine *Jones* factors
22  weigh in favor of transfer.

        1.  <u>Location where the relevant agreements were negotiated and executed</u>

23          As an initial matter, the Court considers which agreements form the basis of the dispute
24  between the parties.  Plaintiffs contend that this litigation turns on the proper interpretation of the
25
26  Gardner Contract between Weyerhaeuser and Gardner.  Dkt. #25 at 2.  Indeed, the central issue
27  in this case is whether coverage existed above the $1,000,000 coverage floor set forth in the
28  Gardner Contract.  *See* Dkt. #1-2 at ¶ 33.  However, given that parties dispute whether

Weyerhaeuser constitutes an "additional insured" under the Blanket Additional Insured Endorsement set forth under NIIC's Primary Policy, *see id.* at ¶¶ 32-33, the analysis also turns on the language contained in NIIC's Primary Policy issued to Gardner in California. Furthermore, the Excess Policies—not the Gardner Contract—are the agreements allegedly breached by Defendants, given that none of the Defendants are parties to Gardner Contract. *Id.* at ¶ 51 (Alleging breach of contract for "unreasonably interpreting their respective policies and the Gardner Contract . . . ."). Accordingly, the Court considers the Gardner Contract, the NIIC Primary Policy, and each of the Excess Policies issued to Gardner all "relevant agreements" for purposes of this *Jones* factor. On this basis, the Central District of California has significantly more contact with the instant dispute. California-based Gardner executed all of the relevant agreements, and all of the policies were issued to Gardner in San Bernadino. The Western District of Washington, in contrast, is only relevant to the extent that the Gardner Contract was negotiated and executed by Weyerhaeuser in Seattle. Dkt. #27 at ¶ 4.

Plaintiffs attempt to minimize the importance of the agreements outside of the Gardner Contract on the basis that they are insurance policies. Plaintiffs argue that because insurance policies are adhesion contracts that rely on the language of the policy rather than extrinsic evidence, the policy considerations for this *Jones* factor are not at play. Dkt. #25 at 11 ([A]bsent evidence showing that NIIC and Gardner Trucking actually engaged in substantive negotiations . . . extrinsic evidence is neither relevant nor necessary to the Court's interpretation of [NIIC's excess policy]." However, Defendants contend that the NIIC's policies *were* negotiated between NIIC and Gardner. *See* Dkt. #14-1 at 2 ("The communications and negotiations between NIIC and Gardner Trucking that culminated in the NIIC Policies occurred entirely between NIIC in Ohio and Gardner Trucking's representatives in California."). As evidence of substantive

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S MOTION TO TRANSFER VENUE - 9

negotiations, courts may consider whether the policies contain endorsements, including those specific to the state of issuance. *See T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *3 (W.D. Wash. Apr. 14, 2016) (considering "Policy's multiple endorsements, some of which are specific to New Jersey" in concluding "that the Policy was negotiated and executed in New Jersey and that this circumstance weighs in favor of transfer to New Jersey"). Here, the NIIC Primary Policy contains multiple endorsements, including those that are California-specific, thus favoring transfer. *See, e.g.*, Dkt. #27-2 at 32, 63, 114.

Furthermore, none of Plaintiffs' cited cases support the proposition that on a motion to transfer, courts should wholly disregard the forum where insurance policies were issued. *See* Dkt. #25 at 11 (citing *Probuilders Specialty Ins. Co. v. Coaker*, No. 14-cv-1888-JLR, 2015 WL 7018415 (W.D. Wash. Nov. 10, 2015); *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 123 Wn.2d 678, 684-85, 871 P.2d 146 (1994)). *Probuilders* merely affirms that interpretation of an insurance policy is a question of law for the court, not a jury, to resolve, while *Lynott* states that it "is unusual" for insurance policies to be negotiated. *See Probuilders*, 2015 WL 7018415, at *3; *Lynott,* 123 Wn.2d at 684–85. Plaintiffs also rely on *Bayley Const. v. Great Am. E & S Ins. Co.*, wherein the court, in ruling on parties' summary judgment motion, concluded that extrinsic evidence submitted by the plaintiff was "irrelevant." *See* 980 F.Supp.2d 1289, n.5 (W.D. Wash. 2013). These cases demonstrate that insurance policies are typically construed as a matter of law, but do not support the presumption on a motion to transfer that extrinsic evidence will be irrelevant.

On the contrary, courts have considered relevant the forum where disputed insurance policies were issued:

> For those factual issues that require determination prior to the court interpreting the policy, or if there are ambiguities in the policy and extrinsic evidence is necessary

to interpret the policy at trial, most of the relevant witnesses will be the Oregon insurance agents and brokers who issued the insurance policies, Stimson's management, including those who provided information to obtain the insurance policies and the insurance claims, and Stimson's manufacturing personnel.

*Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1084 (D. Or. 2001).  Here, it is undisputed that the Central District of California is where Gardners' management and representatives are located, and that issuance of the NIIC Primary Policy and the Excess Policies all occurred in that district.

For these reasons, the location of where the relevant agreements were negotiated and executed weighs strongly in favor of transfer to the Central District of California.

    2.  <u>State most familiar with the governing law</u>

Parties dispute what law governs this case.  Plaintiffs argue that Washington law applies, while Defendants assert that California law applies.  Dkts. #14, #25.  "The ultimate determination on choice of law bears minimal weight on the Court's venue evaluation because federal courts 'are equally equipped to apply distant state laws when the applicable law is not complex.'"  *Reynolds v. Centimark Corp.*, No. C12-0488-RSM, 2012 WL 5914870, at *2 (W.D. Wash. Nov. 16, 2012) (quoting *Horizon House v. Cain Bros. & Co., LLC,* No. C11–1762JLR, 2012 WL 398638, at *2 (W.D. Wash. Feb.7, 2012)).  This case involves a contract dispute regarding a company and its subsidiary's insurance coverage, and none of the parties maintain that the applicable law is complex. *See Kihnke, et al. v. LM Insurance Corp.*, No. C21-0011-JCC, 2021 WL 1401541, at *2 (W.D. Wash. Apr. 14, 2021) ("[I]nsurance coverage disputes are amongst the most common disputes federal courts are asked to resolve.").

Accordingly, the Court finds the forum's familiarity with governing law a neutral factor.

//

//

3. <u>Plaintiff's choice of forum</u>

Courts afford a plaintiff's choice of forum significant deference. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Furthermore, the fact that Weyerhaeuser is a Washington company would typically weigh heavily in the Court's analysis. "This factor is generally given significant weight when the plaintiff resides in the chosen forum." *T-Mobile USA, Inc.*, 2016 WL 1464468, at *4 (quoting *Nordquist v. Blackham*, No. C06-5433FDB, 2006 WL 259731, at *3 (W.D. Wash. Sept. 11, 2006)).

NIIC argues that the Court should afford Plaintiff's choice "minimal deference" given that the operative facts of this dispute did not occur in the forum. Dkt. #14 at 30. The Court disagrees with NIIC's position that Washington "has no meaningful connection" to parties' claims, given Weyerhaeuser's negotiation and execution of the Gardner Contract occurred in Seattle. *Id.* Nevertheless, given that California has substantially more contact to this dispute, *see infra*, § III(C)(5), the Court agrees that this factor should not be given the "significant weight" it usually carries when the plaintiff resides in the choice of forum. *Abritt v. Reliastar Life Ins. Co.*, No. C06-1435-RSM, 2007 WL 666606, at *2 (W.D. Wash. Feb. 27, 2007) ("Where the action has little connection with the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum").

For these reasons, this factor weighs against transfer.

4. <u>Respective parties' contacts with the forum</u>

Plaintiff Weyerhaeuser is a Washington-based company with headquarters in Seattle and distribution facilities in California. Dkt. #44 at ¶¶ 1, 17. Aspen is a foreign insurance company

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 12

based in London.  *Id.* at ¶ 2.  Plaintiffs contend that Aspen "has no offices or permanent relationship with the Central District of California."  Dkt. #25 at 18.  Defendants are nationwide entities with headquarters outside of Washington and California that conduct business in various states across the United States.  Dkt. #44 at ¶¶ 4-10.  NIIC, FMIC, and North River admit that they have conducted business in Washington state.  *See* Dkts. #8 at ¶ 6, #17 at ¶ 8, #18 at ¶ 7.  However, Lexington denies any connection with the forum beyond the fact that its insured, Gardner, contracted with a Washington company that now claims to be an "additional insured."  Dkt. #23 at 3.  While Lexington further argues that it is not subject to personal jurisdiction in the Western District of Washington, Dkt. #25 at 2, the Court declines to reach this question.  Indeed, a motion to dismiss for lack of personal jurisdiction is pending.  *See* Dkt. #51.  On a motion to transfer, the inquiry is properly limited to each party's contacts with the forum.  *See Jones*, 211 F.3d at 498–99.

Here, Weyerhaeuser has substantial contacts in both forums.  While its headquarters are in the Western District of Washington, it maintains distribution facilities, including the site of the claims giving rise to the Underlying Lawsuit, in the Central District of California.  Plaintiffs contend that Aspen has no "permanent relationship" with the Central District of California, but it is unclear what contacts it maintains with the Western District of Washington apart from the Aspen Policy issued to Weyerhaeuser.  *See* Dkt. #44 at ¶ 3.  Furthermore, under the Aspen Policy, Aspen engaged in substantial contact with the Central District of California.  It covered the insured event that occurred in that forum, it contributed to settlement of the Underlying Lawsuit that occurred in that forum, and it now seeks contribution and subrogation as a result of the lawsuit in that forum.  *Id.* at ¶¶ 22, 37, 66-68.  Additionally, all Defendants conduct insurance business in the Central District of California, but Lexington does not conduct insurance business

in the Western District of Washington.  Moreover, to the extent NIIC, FMIC, and North River conduct insurance business in Washington, their contacts with California through issuing their Excess Policies are afforded more weight.  *Inlandboatmen's Union of the Pac. v. Foss Maritime Co.*, No. C14-1403JLR, 2015 WL 64933, at *3 (W.D. Wash. Jan. 5, 2015) (treating party's case related contacts as more significant than general contacts); *see also T-Mobile USA, Inc.*, 2016 WL 1464468, at *5 (same).

For these reasons, the Court finds that this factor weighs in favor of transfer.

5.   The contacts relating to the plaintiff's cause of action in the chosen forum

This factor concerns the contacts between Plaintiffs' claims against Defendants and the chosen forum.  *Hong v. Recreational Equip., Inc.*, No. 19-0951JLR, 2019 WL 5536406, at *5 (W.D. Wash. Oct. 25, 2019); *Jones*, 211 F.3d at 498.  The Court agrees with Plaintiffs that the facts related to Mr. Alfaro's injury have minimal relevance to the instant insurance dispute.  *See Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1192 (S.D. Cal. 2007) ("The focus of this dispute is the Policy, rather than plaintiff's conduct giving rise to the Kuo litigation"); *see also Home Indemnity Co.,* 229 F.Supp.2d at 1084 (denying transfer of insurance coverage dispute to district where tort claims pending).

However, Plaintiffs' position that California has minimal connection to the case is without merit.  In considering each of the events giving rise to claims in this lawsuit, the Court finds that the contacts relating to Plaintiffs' claims are more substantial in California than they are in Washington.  Weyerhaeuser negotiated and signed the Gardner Contract at its headquarters in Seattle and received letters denying coverage there, but the weight of the contacts in California is significantly greater.  This controversy concerns a California company's tower of insurance policies issued by nationwide insurance agents, through a California broker, for liability coverage

of California-based operations.  The Gardner Contract covered Weyerhaeuser's operations at its

facilities in California—specifically, its dedicated carrier locations in Fontana, Long Beach, and

Santa Clarita.  Dkt. #27-10 at 59.  Weyerhaeuser first tendered the Underlying Lawsuit for

defense and indemnity through NIIC by sending notice of the Underlying Lawsuit to Gardner's

representatives in Ontario, California and NIIC's insurance counsel in Santa Barbara.  *See* Dkts.

#27-10; #27-11.  Likewise, the NIIC Policy Agreement, which is central to parties' dispute over

whether Weyerhaeuser is an additional insured on each of Gardner's excess policies, was

negotiated and executed between California and Ohio.  Dkt. #14-1 at 2.  Furthermore, the Excess

Policies underpinning Plaintiffs' breach of contract claims against Defendants were all issued to

Gardner in California.  Washington ultimately has very little connection to the relevant

controversies, except for the fact that Plaintiff Weyerhaeuser's headquarters is located in Seattle.

　　　　Plaintiffs argue that notwithstanding the fact that Defendants' policies were issued

directly to Gardner in the Central District of California rather than to Weyerhaeuser in the

Western District of Washington, the "Blanket Additional Insured Endorsement" clause in each

of their excess policies means that Defendants "should have expected that they would be required

to respond to claims and coverage litigation in any jurisdiction in the United States."  Dkt. #25

at 20.  As an initial matter, whether Weyerhaeuser constitutes an "additional insured" is a central

dispute in this litigation.  *See* Dkt. #49 at 13.  Moreover, even if these contacts were sufficient to

establish personal jurisdiction over Defendants in the Western District of Washington, they are

far more tenuous and indirect than Defendants' contacts with the Central District of California.

　　　　Accordingly, this factor weighs strongly in favor of transfer.

//

//

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 15

6.   Differences in the costs of litigation in the two forums

When considering the difference in cost, courts avoid transferring venue when such action "would merely shift rather than eliminate" costs and inconvenience.  *Hong*, 2019 WL 5536406, at *6 (quoting *Decker Coal Co.*, 805 F.2d at 843) (internal quotations omitted).  The analysis under this factor often focuses on the forum's relative proximity to witnesses.  *See, e.g.*, *id.*; *Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*, No. C16-0362JLR, 2016 WL 3255003, at *6 (W.D. Wash. June 13, 2016) (concluding this factor favored transfer Michigan since the majority of key witnesses lived closer in proximity to Michigan than Washington).  "Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify."  *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013).  In addition to the relative number of witnesses located near the chosen forum, courts also consider the parties' relative capacity to absorb litigation costs.  *See Pedigo Prod., Inc.*, 2013 WL 364814, at *3 ("The disruption of business affairs due to the time and cost of distant litigation is far more severe and detrimental to a small company than it is to a much larger corporation.") (internal quotations and citation omitted).

Plaintiffs argue that this factor is neutral, given that transfer from Washington to California would merely shift rather than reduce costs.  Dkt. #25 at 21.  NIIC argues that transfer to California would reduce costs given that "virtually all" the witnesses who have information relevant to parties' claims and defenses are located in California, whereas only Weyerhaeuser's in-house counsel is located in Washington.  Dkt. #14 at 41.  NIIC also argues that California law controls the parties' claims, which is inapposite to this factor.  *See supra*, § III(A)(2).

NIIC's contention that more witnesses are located in California does not demonstrate that transferring the venue would reduce costs, given that it has "not specifically identified the

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S MOTION TO TRANSFER VENUE - 16

witnesses that it will wish to depose or call at trial . . . ." Dkt. #14 at 24, n.4. For that reason, the location of witnesses—which is addressed in the eighth *Jones* factor—does not demonstrate whether transferring venue "would merely shift rather than eliminate" costs and inconvenience.

Accordingly, the Court finds this factor neutral.

7. <u>Availability of compulsory process to compel attendance of unwilling non-party witnesses</u>

The Court finds this factor neutral, as neither party has identified non-party witnesses that may require compulsory process to compel attendance.

8. <u>Ease of access to sources of proof</u>

This factor considers location of witnesses, documentary evidence, and inventory to be inspected, if any. *See Jones*, 211 F.3d at 499; *Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *12 (W.D. Wash. Oct. 20, 2017). However, "the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence." *Organo Gold Int'l, Inc. v. Aussie Rules Marine Services, Ltd.*, No. C18-0108JLR, 2018 WL 2359132, at *6 (W.D. Wash. May 24, 2018) (internal quotations and citation omitted). Here, parties have not identified any relevant documents likely to present issues with respect to ease of access given the ability of electronic transfer. *See generally* Dkts. #14, #25. For that reason, given the ease of transfer of electronic documents, the primary inquiry for this factor is the location of relevant witnesses.

The relevant witnesses here would be individuals who participated in the negotiation and execution of the Gardner Contract and the negotiation and issuance of the NIIC Primary Policy and Excess Policies. Relevant witnesses would also include parties' insurance coverage counsel who communicated their positions on Weyerhaeuser's status as an "additional insured" under the NIIC primary policy and the excess policies. While Weyerhaeuser and its counsel are located in

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 17

the Western District of Washington, a larger contingent of witnesses are in the Central District of California.  This includes Gardner's management and representatives, located in Ontario, California, who were involved in the negotiation and execution of the Gardner Contract and Gardner's tower of insurance policies.  Dkt. #14-29 at 4-5.  The location of these non-party witnesses carries more weight than the location of any party witness, given that they cannot be compelled to testify at trial, if need be.  *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("The court accords less weight to the inconvenience of *party* witnesses . . . as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated.") (emphasis in original).

Furthermore, NIIC's insurance coverage counsel, with whom Weyerhaeuser's counsel corresponded regarding NIIC's coverage position, reside in Santa Barbara, California.  Dkt. #14-29 at 7.  Other witnesses that reside in California but outside the Central District include Gardner's insurance broker located in Granite Bay, California, whose representatives have knowledge or information related to NIIC's Primary Policy and the second-level excess policy. *Id.* at 9.  Likewise, Lexington's insurance coverage counsel, who communicated with Weyerhaeuser's counsel regarding Lexington's coverage position, resides in Fresno.  Dkt. #27-14 at 2-5.  The remaining witnesses with knowledge related to the NIIC Primary Policy or the excess policies are located outside of California and Washington.  *See* Dkt. # 14-29 at 11-13 (Representatives for NIIC, Lexington, AIG, Aspen, First Mercury, and North River located in Ohio, Massachusetts, New York, London, and New Jersey).

Finally, to the extent Plaintiffs argue that the location of witnesses is insignificant in light of remote depositions during the COVID-19 pandemic, *see* Dkt. #25 at 22-23, the Court finds that the dynamic situation surrounding the pandemic does not diminish its consideration of this

1   factor.  *See Hoyt v. Liberty Mut. Grp. Inc.*, No. 2:20-CV-00379-SMJ, 2021 WL 966018, at *4

2   (E.D. Wash. Mar. 15, 2021) ("Given the ever-changing situation surrounding the pandemic,

3   video testimony may cease to be the norm.").

4       Because ease of access to witnesses—particularly non-party witnesses—is greater in the

5   Central District of California, this factor weighs in favor of transfer.

6       9.   Public policy considerations of the forum state

7

8       Lastly, public policy factors the Court must consider include "the administrative

9   difficulties flowing from court congestion" as well as the state's "interest in having localized

10  controversies decided at home." *Atl. Marine Constr. Co., Inc., v. U.S. Dist. Ct. for the W. Dist.*

11  *of Tex.*, 571 U.S. 49, 68 n.6 (2013).  "Additionally, states have an interest in providing a forum

12  for their injured residents." *Organo Gold Int'l, Inc.*, 2018 WL 2359132, at *6 (internal quotations

13  and citation omitted).

14

15      With respect to court congestion, Plaintiffs point out that civil dockets in the Central

16  District of California are more backlogged than those in the Western District of Washington.

17  Dkt. #25 at 24.[1]  At the same time, the Court notes that several motions are pending: Plaintiffs'

18  motion for partial summary judgment, Defendant NIIC's motion to continue the hearing on

19  Plaintiffs' motion for partial summary judgment, and Lexington's motion to dismiss for lack of

20  personal jurisdiction.  *See* Dkts. #26, #41, #51.  While transfer of this case would render moot

21  Lexington's motion to dismiss for lack of personal jurisdiction, it would also likely delay

22  disposition of the remaining motions.  For that reason, judicial economy weighs against transfer.

23

24

25

26  ───────────────

27  [1] Plaintiffs cite federal court management statistics dated June 30, 2020.  The Court takes judicial notice
    of updated statistics which reflect the same comparative backlog between the Central District of
    California and the Western District of Washington.  *See* U.S. Courts, Federal Court Management
28  Statistics – U.S. District Court Judicial Caseload Profile at 68, 76 (Sept. 30, 2020) (available at
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf).

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 19

On the second prong regarding "localized controversies," both Washington and California have a nexus to the claims at issue in this litigation.  The Gardner Contract was negotiated and executed in Washington, and Weyerhaeuser received notice of Defendants' coverage denials at its Seattle office.  However, the controversy is more localized in California given that (1) California-based Gardner is the other party to the Gardner Contract; (2) the NIIC Primary Policy and each of the excess policies were purchased by Gardner and issued in California; and (3) NIIC's and Lexington's California-based counsel communicated NIIC's and Lexington's coverage positions in the Underlying Lawsuit.  Nevertheless, because Weyerhaeuser—not Gardner—is the plaintiff with the alleged injury, states' interests in providing a forum for injured residents favors Washington.  *Organo Gold Int'l, Inc.*, 2018 WL 2359132, at *6.

Given that judicial economy and resolution of localized controversies favor the Western District of Washington, the Court finds that public policy considerations weigh against transfer.

**D.  Balancing the *Jones* Factors**

On balance, the factors weigh in favor of transfer to the Central District of California. Of the nine factors, three are neutral, four weigh in favor of transfer, and two weigh against transfer. Of these factors, both the location where the relevant agreements were negotiated and executed and contacts related to Plaintiffs' claims weigh strongly in favor of transfer.  While a plaintiff's choice of forum is ordinarily afforded substantial deference, the Court finds that Plaintiffs' choice does not overcome the factors that are neutral or weigh in favor of transfer.  Accordingly, the Court concludes that Defendants' Motion to Transfer should be GRANTED.

//

//

ORDER GRANTING DEFENDANT NATIONAL INTERSTATE INSURANCE COMPANY'S
MOTION TO TRANSFER VENUE - 20

## IV.   CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby ORDERS that Defendants' Motion to Transfer Venue, Dkt. #14, is GRANTED.  This case is TRANSFERRED to the U.S. District Court for the Central District of California.  The Clerk is DIRECTED to close this case.


DATED this 22nd day of April, 2021.



RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE